UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

YVONNE ORIAKU,

    Plaintiff,

v.

INOVALON, INC.,

    Defendant.

Civil Action No. 24-2674-TDC

## MEMORANDUM ORDER

Plaintiff Yvonne Oriaku has filed a civil action against Defendant Inovalon, Inc. ("Inovalon") in which she alleges employment discrimination and retaliation in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("§ 1981"), and the Maryland Fair Employment Practices Act ("MFEPA"), Md. Code Ann., State Gov't §§ 20–601 to 20–1203 (West 2021), as well as several state common law tort claims, arising out of her employment with Inovalon. Oriaku filed a Motion to Stay Arbitration in which she seeks to stay currently pending proceedings before the American Arbitration Association ("AAA"), and Inovalon has filed a Motion to Stay this Action and Compel Arbitration ("the Motion to Compel Arbitration"). Both Motions are fully briefed. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, Inovalon's Motion will be GRANTED, and Oriaku's Motion will be DENIED.

## DISCUSSION

In its Motion to Compel Arbitration, Inovalon seeks to enforce an arbitration clause ("the Arbitration Agreement") in its employment contract with Oriaku ("the Employment Agreement").

Inovalon's request to compel arbitration is governed by the Federal Arbitration Act ("FAA"), which provides that: "A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract . . . ." 9 U.S.C. § 2. A litigant can compel arbitration under the FAA upon a showing of: (1) "the existence of a dispute between the parties"; (2) "a written agreement that includes an arbitration provision which purports to cover the dispute"; (3) "the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce"; and (4) "the failure, neglect or refusal of the defendant to arbitrate the dispute." *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 501 (4th Cir. 2002) (quoting *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991)). Only the second element is in dispute in that Oriaku contests the validity of the Arbitration Agreement.

On April 10, 2023, Inovalon and Oriaku entered into the Employment Agreement, which includes the Arbitration Agreement, consisting of a "Dispute Resolution" clause stating that "the parties agree that all . . . litigated disputes will be resolved in accordance with binding mandatory arbitration," pursuant to the following provision:

> Except as provided in Section 7.1(c), any dispute arising out of this Agreement, Employee's employment with Employer, the termination of that employment, the interpretation of this Agreement, any matters affected by this Agreement, or whether the parties have agreed to arbitrate a particular claim, must be submitted by one or both parties to binding arbitration before a single arbitrator under the rules of the American Arbitration Association ("AAA") then applicable to employment disputes. In agreeing to mandatory arbitration, the parties expressly understand and agree that they are waiving their rights to pursue other available dispute resolution processes, such as a court action or administrative proceeding, to settle their disputes.

Employment Agreement § 7.1(a), (b), Am. Compl. App'x C, ECF No. 12-3.

Oriaku does not dispute that, under the plain language of this provision, the parties agreed to binding arbitration of her claims and that, in fact, she initiated arbitration proceedings before filing the present civil action. She now asserts several arguments to escape the applicability of the Arbitration Agreement.

**I.      Enforceability of the Arbitration Agreement**

First, as to the validity of the Arbitration Agreement overall, Oriaku now alleges that it is void as procedurally and substantively unconscionable. "[B]efore referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019). As to procedural unconscionability, Oriaku asserts that Inovalon "procedurally drafted the Agreement without offering anything substantive to Oriaku, assuring that Oriaku's interests were not considered and Oriaku lacked any meaningful choice as to the terms of the Agreement when Oriaku was *required* to sign the Agreement for gainful employment." Opp'n Mot. Compel at 6, ECF No. 38. In this argument, Oriaku effectively asserts that the Employment Agreement, including the Arbitration Agreement, constitutes a contract of adhesion in that it was "drafted unilaterally by the dominant party and then presented on a 'take-it-or-leave-it' basis to the weaker party who has no real opportunity to bargain about its terms." *Walther v. Sovereign Bank*, 872 A.2d 735, 746 (Md. 2005) (quoting Restatement (Second) of Conflict of Laws § 187 cmt. B (1971)). Notably, however, a "contract of adhesion is not automatically deemed *per se* unconscionable." *Id.* Courts applying Maryland law have rejected unconscionability challenges to arbitration clauses in form contracts that employees or consumers were required to sign under similar circumstances to those presented here. *See, e.g., id.* at 739, 746, 757 (concluding that an arbitration clause in a form "Disclosure Agreement" required to be signed as part of a mortgage loan transaction agreement presented with

3

"no opportunity for negotiation" was not unconscionable); *Doyle v. Fin. Am., LLC*, 918 A.2d 1266, 1270 & n.3, 1274–76 (Md. Ct. Spec. App. 2007) (same); *Hill v. Peoplesoft USA, Inc.*, 412 F.3d 540, 542, 544 n.* (4th Cir. 2005) (concluding that an arbitration agreement required by an employer as a condition of employment was not procedurally or substantively unconscionable under Maryland law); *Meyer v. State Farm Fire & Cas. Co.*, 582 A.2d 275, 278 (Md. Ct. Spec. App. 1990) (concluding that a dispute resolution clause included as part of a fire insurance policy was not unconscionable, even assuming the policy was a contract of adhesion).

As for substantive unconscionability, Oriaku asserts that "Section 7.1 and the rest of the Agreement unreasonably favors the interests of Defendant over Oriaku," specifically by affording "excessive power to Defendant to bring injunctions without affording Oriaku the same." Opp'n Mot. Compel at 6 & n.13. On this issue, the Court considers "whether the terms in the arbitration clause are so one-sided as to oppress or unfairly surprise an innocent party or whether there exists an egregious imbalance in the obligations and rights imposed by the arbitration clause." *Walther*, 872 A.2d at 747. Here, there is no dispute that there is valid consideration for the Arbitration Agreement in that, under its terms, both Oriaku and Inovalon mutually agreed to forgo civil litigation for the vast majority of matters arising out of their employment relationship and instead to submit those matters to arbitration. *See Cheek v. United Healthcare of Mid-Atl., Inc.*, 835 A.2d 656, 665 (2003) ("In an enforceable arbitration agreement . . . each party has promised to arbitrate disputes arising from an underlying contract, and 'each promise provides consideration for the other.'" (quoting *Holmes v. Coverall N. Am., Inc.*, 649 A.2d 365, 370 (1994))). Oriaku argues that the Arbitration Agreement is too one-sided because it contains, in section 7.1(c), a "limited exception" that permits Inovalon, but not Oriaku, to file a civil action seeking an injunction, primarily in the event of an alleged violation of a non-disclosure or non-competition agreement,

4

to "ensure that the relief sought in arbitration is not rendered ineffectual by any interim harm." Employment Agreement § 7.1(c).

Although this exception renders the terms of the Arbitration Agreement somewhat imbalanced, the Court of Appeals of Maryland, now known as the Supreme Court of Maryland, has previously rejected the argument that there must be "an exactly even exchange of identical rights and obligations between the two contracting parties before a contract will be deemed valid." *Walther*, 872 A.2d at 748. In *Walther*, the court rejected an argument that a provision allowing one party "to litigate certain specific claims instead of having to submit them to arbitration" rendered the agreement unconscionable. *Id.*; *see also Bailey v. Thompson Creek Window Co.*, No. 21-2345, 2023 WL 4787443, at *2 (4th Cir. July 27, 2023) (unpublished) (in finding under Maryland law that an arbitration agreement was valid even though one party reserved the right to bring certain claims in court, stating that one party "may have gotten the better of that bargain, but that does not render the agreement unconscionable"). Thus, the Court concludes that the parties' arbitration agreement is not unconscionable and is therefore enforceable.

## II.     The Injunction Provision

Oriaku also argues that the fact that Inovalon asserted a counterclaim seeking injunctive relief now requires the dispute to proceed in court because section 7.1(c), in her view, states that "Defendant's ability to obtain injunctive relief can only be obtained through the Court," and where Inovalon's counterclaims "arise out of the same set of facts and timelines," "a single forum of this Court should be found to be the most efficient and cost-beneficial way to assure that justice is done to the parties' dispute." Opp'n Mot. Compel at 1, 3. This argument fails for two reasons. First, where Oriaku is arguing that one or more claims are not subject to arbitration under the terms of the Arbitration Agreement, that agreement specifically provides that such a determination of

arbitrability is to be made by the arbitrator. Section 7.1(b) of the Employment Agreement provides that "[e]xcept as provided in section 7.1(c), any dispute arising out of . . . whether the parties have agreed to arbitrate a particular claim, must be submitted by one or both parties to binding arbitration." Employment Agreement § 7.1(b). "When deciding whether parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts," but should not find that "the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e] evidence' that they did so." *United First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (alterations in original) (quoting *AT & T Technologies, Inc. v. Commc'ns Workers*, 475 U.S. 643, 649 (1986)). Under Maryland law, contract terms are interpreted by considering the "'customary, ordinary, and accepted meaning' of the language used." *Fister v. Allstate Life Ins. Co.*, 783 A.2d 194, 199 (Md. 2001) (quoting *Cole v. State Farm Mutual Ins. Co.*, 753 A.2d 533, 537 (Md. 2000)). Where the cited language makes clear that the parties agreed to have any questions of whether claims are arbitrable decided by the arbitrator, and there is nothing in section 7.1(c) that provides an exception to this general rule on arbitrability, the Court finds that it is for the arbitrator, not the Court, to decide whether Inovalon's counterclaim seeking an injunction, as well as the other claims, are subject to arbitration. Indeed, the arbitrator in the ongoing arbitration proceeding has already determined that he has "the authority to rule on whether any claims or counterclaims are subject to being ruled upon in this arbitration." AAA Order at 4, Mot. Compel Ex. E, ECF No. 34-6.

Second, even if this Court were to consider whether section 7.1(c) requires the counterclaim seeking an injunction to be resolved in court, the Court finds that the plain language of section 7.1(c) does not support Oriaku's position. Rather, that provision states that "notwithstanding the mandatory arbitration provision of Section 7.1(b), Employer will have the

6

right, in addition to any other rights it may have, to obtain injunctive relief to restrain any breach or threatened breach or otherwise to specifically enforce any provision of this Agreement" in court. Employment Agreement § 7.1(c). This language specifically gives Inovalon the right, but does not require it, to pursue injunctive relief in court. Where there is no prohibition on an employer seeking injunctive relief in arbitration, Oriaku has not identified a basis to avoid arbitration of all of her claims.

### III.  Remaining Arguments

Oriaku's remaining arguments likewise fail. For the reasons stated above, Oriaku's argument that arbitration is not permitted because her claims or defenses relate to the False Claims Act ("FCA") is a question of arbitrability that must be decided by the arbitrator. *See supra* part II; *see also U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 381 (4th Cir. 2008) (rejecting the argument that "retaliatory termination claims under the FCA are not arbitrable"). Her claim that she can no longer receive a fair adjudication in arbitration because her objections to the arbitrator have been made public is unpersuasive because, if necessary, she can seek a new arbitrator, and if there were any actual bias, she could then seek relief from the arbitration decision in court. *See* 9 U.S.C. § 10(a)(2). Finally, her claim that Inovalon's Motion was untimely is unfounded where Oriaku filed this civil case under seal, which was entirely unwarranted, and where Inovalon promptly filed its Motion one week after agreeing to accept service of process of the operative complaint in this case.

Accordingly, for the reasons stated above, the Court will grant Inovalon's Motion to Stay this Action and Compel Arbitration. Where this case belongs in arbitration, the Court necessarily will deny Oriaku's Motion to Stay Arbitration.

## CONCLUSION

For the foregoing reasons, it is hereby ORDERED that:

1. Inovalon's Motion to Compel Arbitration, ECF No. 34, is GRANTED, and this civil action is STAYED pending arbitration of this dispute.

2. Oriaku's Motion to Stay Arbitration, ECF No. 9, is DENIED.

3. The parties' Motions to Seal, ECF Nos. 13, 22, 28, are GRANTED.

4. Oriaku's Motion for Leave to File a Physical Exhibit, ECF No. 8, is DENIED AS MOOT.

5. Oriaku's Motion for Leave to File Supplemental Information to her Motion to Commence Litigation and Motion for Leave to File a Reply to Defendant's Reply to her Motion to Commence Litigation, ECF Nos. 40, 41, which are construed as seeking leave to file a surreply, are DENIED.

Date: March 26, 2025

THEODORE D. CHUANG
United States District Judge